IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**MAURICE MUHAMMAD,**
**Plaintiff,**

v.                                                              Case No.: 5:24-cv-5543

**NATIONAL ASSOCIATION OF REALTORS (NAR),**
**PENNSYLVANIA ASSOCIATION OF REALTORS (PAR),**
**GREATER LEHIGH VALLEY MULTIPLE LISTING SERVICE (GLVMLS),**
**ALLYSON LYSAGHT,**
**JUSTIN POREMBO, and**
**JOHN DOES 1-10 (UNKNOWN PARTIES),**
**Defendants.**
_____/

## AMENDED COMPLAINT

Plaintiff MAURICE MUHAMMAD, pro se, brings this action against Defendants for violations of federal antitrust laws, fair housing violations, civil rights discrimination, and due process violations. Plaintiff seeks injunctive relief, damages, and a declaratory judgment.

Defendants have used their dominant position in the real estate market to restrict access to the Multiple Listing Service (MLS), retaliate against professionals who challenge their authority, impose unjust penalties, and suppress fair competition in violation of federal and state laws. Plaintiff seeks declaratory and injunctive relief, along with compensatory and punitive damages.

**I.        JURISDICTION AND VENUE**

1. This Court has jurisdiction under 42 U.S.C. § 1981 & § 1983 (Civil Rights Act), 42 U.S.C. § 3601 et seq. (Fair Housing Act), and 28 U.S.C. §§ 1331 & 1337 (Federal Question Jurisdiction).

2. Venue is proper under 28 U.S.C. § 1391(b) as the violations occurred within this judicial district.

## II.   PARTIES

3. Plaintiff Maurice Muhammad has been a licensed real estate professional since 2000 and a paid member of the National Association of Realtors (NAR). Plaintiff has served in multiple leadership roles, including a national Board of Directors position for NAREB.

4. Defendants include:
   - NAR (a trade association governing real estate professionals nationwide).
   - PAR (state affiliate of NAR, enforcing anti-competitive rules).
   - GLVMLS (regional MLS controlling real estate listings and access).
   - Allyson Lysaght and Justin Porembo (executives involved in retaliatory actions).
   - John Does 1-10 (individuals to be identified through discovery).

## III.   FACTUAL BACKGROUND

5. Plaintiff was subjected to disparate enforcement of ethical complaints, receiving excessive penalties while others received leniency.

6. HUD conducted fair housing tests and documented steering practices by NAR and its affiliates. However, rather than addressing these violations, Defendants ignored the findings and retaliated against Plaintiff.

7. Plaintiff was improperly charged by the board after a complainant declined to appear, violating procedural fairness. Plaintiff has email evidence confirming this misconduct.

8. The Defendants attempt/actual to coerce Plaintiff/ its employed agents into returning his license by misrepresenting regulatory authority and imposing excessive fines, violating due process and fair competition laws.

9. NAR controls millions real estate professionals, with 1.5 million forced into membership to access the MLS. This restricts competition, violating United States v. National Association of Realtors, No. 1:20-cv-3356 (D.D.C. 2020).

10. The MLS is an essential tool for real estate professionals. Defendants restrict access, forcing agents into NAR membership, violating FTC v. Indiana Federation of Dentists, 476 U.S. 447 (1986).

11. Plaintiff was subject to restraint of trade when GLVMLS applied inconsistent fees and denied access to MLS data, violating 15 U.S.C. § 1 (Sherman Act).

## IV. **LEGAL CLAIMS**

**COUNT I: VIOLATION OF THE SHERMAN ANTITRUST ACT (15 U.S.C. §§ 1, 2)**

12. Defendants engaged in anticompetitive practices by restricting MLS access to NAR members, imposing excessive fees and fines to eliminate competition and engaging in steering to maintain an unfair market advantage.

13. These actions constitute illegal monopolization under *FTC v. Indiana Federation of Dentists*, 476 U.S. 447 (1986).

14. The National Association of Realtors (NAR) and its affiliates control access to critical real estate data through MLS systems, which are essential for real estate professionals to operate. By requiring real estate agents to be NAR members to gain access to MLS data, Defendants have created an artificial barrier to entry, limiting market participation to only those who comply with their monopolistic rules. And comply or get forced out of business.

15. The effect of Defendants' conduct is a direct suppression of market competition. Many real estate professionals, particularly minority-owned businesses and independent brokerages, face financial barriers and are forced out of the industry due to the burdensome costs and restrictive requirements imposed by Defendants.

16. The harm to consumers is substantial. By preventing non-NAR members from accessing MLS data, Defendants have artificially inflated commission rates, limited consumer choice, and maintained a system that prioritizes realtor profits over consumer benefits. Homebuyers and sellers

are forced to pay higher commissions due to the lack of market competition and price-fixing arrangements that benefit NAR-affiliated brokers.

17. Defendants' MLS practices violate multiple principles established by the Department of Justice (DOJ) and Federal Trade Commission (FTC) regarding fair market competition. The DOJ has previously investigated NAR for antitrust violations and has repeatedly found that their policies hinder consumer choice and prevent fair competition among real estate professionals.

18. Defendants' conduct is ongoing, and unless enjoined by this Court, they will continue to engage in monopolistic and exclusionary practices that violate federal antitrust laws.

**COUNT II: VIOLATION OF THE FAIR HOUSING ACT (42 U.S.C. § 3601 et seq.)**

19. Defendants failed to act on documented steering by HUD, perpetuating racial discrimination in the housing market.

20. Courts recognize HUD's duty to prevent discrimination in *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982).

21. Plaintiff alleges that Defendants, through their policies, actions, and omissions, perpetuated systemic racial discrimination in real estate transactions by allowing, facilitating, and covering up steering practices that disproportionately harm minority real estate professionals and homebuyers.

22. Plaintiff and other minority real estate professionals were subjected to disparate enforcement of ethics complaints and penalties. While white real estate professionals were given leniency for similar or more serious offenses, Plaintiff faced excessive penalties, unjust fees, and was eventually coerced into almost relinquishing agents license.( having been visited by the Real Estate Commission,

23. Courts have held that discriminatory enforcement of real estate regulations can violate the FHA when it disproportionately harms minority professionals and limits their ability to participate in the housing market. See *Smith v. Town of Clarkton,* 682 F.2d 1055 (4th Cir. 1982) (holding that housing discrimination includes regulatory actions that disproportionately harm minorities).

**COUNT III: CIVIL RIGHTS VIOLATIONS (42 U.S.C. §§ 1981, 1983)**

24. Defendants discriminated against Plaintiff based on race by imposing harsher penalties than similarly situated non-minority professionals and allowing a Director to use race as a tool for personal grievances. Allyson Lysagt Via Email.

25. Plaintiff was unfairly targeted in disciplinary proceedings, whereas similarly situated white real estate professionals engaged in more severe or comparable conduct but were not penalized or received significantly lighter consequences.

26. The NAR Code of Ethics states that all REALTORS® must adhere to fairness and nondiscrimination in professional services. However, Defendants have ignored this mandate and selectively enforced their rules based on race.

27. Plaintiff has email and phone records that demonstrate that Defendants actively sought to charge him even after the complainant declined to appear at the ethics hearing.

28. White agents facing comparable allegations have been allowed to resolve complaints informally or have had charges dismissed altogether,(GLVRMLS) but Plaintiff was subjected to a disproportionately heavy-handed approach, excessive fines, and forced license surrender.

29. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) supports that disparate treatment based on race constitutes civil rights violations.

**COUNT IV: DUE PROCESS VIOLATIONS**

30. Defendants denied Plaintiff a fair hearing by filing charges after a complainant withdrew and acting beyond regulatory authority in revoking a license. This violated Patterson v. McLean Credit Union, 491 U.S. 164 (1989).

31. Plaintiff was deprived of his property rights, professional reputation, and ability to work in real estate due to Defendants' arbitrary, unfair, and retaliatory enforcement actions. These actions violated his procedural and substantive due process rights under the Fourteenth Amendment and federal law.

32. Due process requires fair procedures before depriving an individual of a protected property or liberty interest. In the context of professional licensing and regulatory enforcement, courts have repeatedly held that arbitrary enforcement, biased decision-making, and lack of notice or a fair hearing violate constitutional due process.

33. Defendants charged Plaintiff with ethics violations even after the original complainant declined to appear or provide evidence. Despite this, Defendants proceeded with disciplinary actions without an independent review or basis for the charges.

34. Defendants applied rules and penalties in an inconsistent and retaliatory manner to punish Plaintiff for speaking out against discriminatory practices. Plaintiff's ethics case was handled with extreme severity, while other similarly situated real estate professionals faced lenient treatment for more severe infractions.

35. Defendants' selective enforcement of their policies violates constitutional due process. The Equal Protection Clause of the Fourteenth Amendment prohibits the arbitrary targeting of individuals through selective enforcement of regulations.

**COUNT V: UNFAIR TRADE PRACTICES (STATE LAW CLAIMS)**

36. P.S. §§ 201-1 et seq., which prohibits "unfair methods of competition" and "unfair or deceptive acts or practices" in trade or commerce.

37. Unfair Business Practices: Defendants used their control over MLS access, real estate licensing, and ethical enforcement to create an unfair playing field, in which plaintiff was subjected to excessive and punitive fees, making it financially impossible to continue working as a real estate professional.

38. Defendants misrepresented their authority, falsely claiming they had the power to revoke Plaintiff's real estate license, forcing him to return it under duress.

39. Plaintiff's complaints against steering and discrimination were ignored, while fabricated complaints against him were aggressively pursued, creating a pattern of biased enforcement.

40. Defendants used coercive tactics to punish Plaintiff for speaking out against industry corruption, including the intentional imposition of vague and arbitrary penalties to force him out of business, threatening to report him to state licensing authorities for baseless reasons, damaging his professional reputation, refusing to reinstate Plaintiff's membership and MLS access, despite him meeting all licensing and membership requirements.

41. Defendants made false and misleading representations regarding their rules and procedures, including:

42. Publicly advertising MLS as an "open and fair marketplace", while internally maintaining barriers that prevent minority professionals from competing equally.

43. Stating that all NAR members receive equal treatment, while in practice, minority professionals, including Plaintiff, faced targeted penalties and discrimination.

44. Misleading members by claiming MLS participation is optional, when in reality, it is a mandatory requirement for professionals to conduct business, constituting a form of forced membership and unlawful tying arrangement.(NAR,PAR,Local GLVMLS)

45. Defendants unlawfully tied access to MLS data and real estate transactions to mandatory membership fees, ethics compliance, and affiliation with NAR, thereby preventing independent real estate professionals from competing fairly, eliminating competition by forcing real estate professionals into an NAR-controlled system, MLS,Forms,E-Key & Lockbox engaging in monopolistic behavior, restricting market entry, and driving up the cost of doing business in violation of Commonwealth v. Monumental Properties, Inc., 329 A.2d 812 (Pa. 1974).

46. The Pennsylvania Supreme Court has established that "unfair trade practices include not only deception but also conduct that offends public policy, is immoral, unethical, oppressive, or unscrupulous." (Gabriel v. O'Hara, 534 A.2d 488 (Pa. Super. 1987)).

47. Defendants' actions were oppressive and unscrupulous by selectively enforcing penalties to drive Plaintiff out of business.

48. Their refusal to allow MLS access without forced NAR membership is a direct violation of Pennsylvania's laws against restraint of trade and deceptive business practices.

49. As a direct result of these unfair and deceptive practices, Plaintiff suffered financial losses due to restricted MLS access and revoked license, severe reputational damage, making it difficult to re-enter the industry and emotional distress and economic hardship from being coerced out of his profession.other agents have been and are effected

## V. REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

Declare Defendants' actions violations of federal and state laws.

2. Enjoin Defendants from restricting MLS access based on NAR membership, applying discriminatory penalties and fees and engaging in steering and anticompetitive practices.

3. Order the Department of Justice (DOJ), Federal Trade Commission (FTC), Pennsylvania Real Estate Commission (PA REC), and HUD to file amicus briefs clarifying their positions.

4. Award compensatory and punitive damages for lost income, emotional distress, and reputational harm.

5. Grant any other relief the Court deems just and proper.

**Respectfully submitted,**
**Maurice Muhammad**
**Pro Se Plaintiff**
